Chew's Adm'rs *vs.* Beall,

(Decided May 6th, 1859.)

---

AMELIA H. CHEW and R. B. CHEW, Adm'rs *c. t. a.* of LEONARD H. CHEW, *vs.* GRACE C. BEALL.

A daughter, when sole, gave to her mother who was a *feme covert*, a negro slave, *Maria*, for her sole and separate use, the gift containing no restriction or specification of the mode of alienation. Subsequently, the

mother, at the instance of the daughter and the daughter's husband, *exchanged* Maria for *June,* another slave, and by virtue of this exchange, the daughter and her husband *received* and *sold* Maria. HELD:

That the title of the mother to *June* and her children, born after the exchange, cannot be successfully resisted by the representatives of the daughter's husband, upon the ground of a supposed *want of authority* in the mother to make the exchange.

Where personal property is given to a *feme covert* to her separate use simply, without restricting her power of disposing of it, or prescribing the mode in which that power is to be exercised, she may act, in reference to the disposition of it, as a *feme sole.*

A parol gift of a negro slave, accompanied with *delivery,* is valid, and a separate *use* for a *feme covert* in such property may be made by *parol,* where the slave is delivered at the time of the gift.

If, where an estate in personalty has been created, simply for the separate use of the wife, without naming a trustee, the husband is to be considered as trustee for the wife, still, when the coverture ends by the death of the husband, and the wife survives, she is entitled to the possession, and may maintain *replevin* for the property, the right of possession being sufficient to support this action.

Prayers, that the plaintiff is not entitled to recover the property in controversy, if the jury find certain facts, *omitting* all allusion to the *separate use* of the property in the plaintiff, though there was evidence tending to show such use, are erroneous.

Proof by an examined copy of the assessors' books, that the negroes in controversy were not upon the list of negroes assessed to the plaintiff, and that they were assessed to the defendants' testator, is not admissible testimony for the defendants, there being no proof that the lists of negroes so assessed to each were signed or sworn to by either, nor that the plaintiff had knowledge the negroes in contest were assessed to the defendants' testator.

A judgment will not be reversed even for erroneous rulings against the appellants, which did them *no injury,* from the fact, that if such rulings had been in their favor, the effect would have been to exclude all proof of the existence, loss and contents, of a written paper, and thus leave the appellee's right to recover upon *uncontradicted* parol proof, sufficient to authorise a verdict in his favor.

APPEAL from the Circuit Court for Prince Georges county.

*Replevin,* brought on the 24th of February 1857, by the appellee against the appellants, for two negro slaves Betty and Nelly. Pleas *non-cepit,* property in defendants, property in a stranger, and limitations. The case was tried upon issues joined on these pleas, and in the course of the trial five excep·

tions were taken by the defendants, which, with the facts of the case, are fully stated in the opinion of this court. The verdict and judgment were in favor of the plaintiff, and the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*D. C. Digges* and *Thos. G. Pratt* for the appellants.

As to the first exception it is insisted:

1st. That this court, in the investigation of the question arising under this exception, can only look to the facts stated in and made part of it, (11 *Md. Rep.*, 149, *Armstrong vs. Thruston,*) and that the broad proposition decided by the court below is, that a gift of a negro made by deed, may be proved by parol, without even an attempt to show the loss of the deed or otherwise account for its non-production.

2nd. That if this court can look to other parts of the deposition of Caroline Mackall, than the part objected to and embraced in the exception, it will then appear she had no such knowledge of the paper, or its loss, as would make her competent; for immediately following the words excepted to, she says, "I *never saw* the paper and have no further knowledge of it than this, that I have often heard Mrs. Beall state, in the presence of Mrs. Chew, her daughter, that she and her husband had signed and given her such a paper, and regret the loss of it, and at no time did *Mrs. Chew* deny that she had given Jane to her mother in exchange for Maria, and that *she* had given such a written paper to her in attestation of it." The only other part of her testimony in which this witness speaks of the paper and its loss, is, where she says, "I have known Mrs. Beall to search diligently for the paper spoken of, without being able to find the same." Now it is insisted, that the party seeking to give parol evidence of the contents of a written paper, must establish by competent proof, 1st, the original existence of the paper, and 2nd, its loss; that in the present case, the declarations of Mrs. Beall, (the only evidence offered for that purpose,) in the presence of Mrs. Chew, are

not evidence against the administrators of L. H. Chew, her husband, nor are the admissions of Mrs. Chew, made when she was not administrator, admissible to bind her when she became such, (3 *Gill*, 482, *Dent vs. Dent;* 1 *Greenlf. on Ev.*, secs. 185, 341; 6 *H. & J.*, 153, *Corse vs. Patterson,*) and that the declaration of the witness, that she has known Mrs. Beall to search for the paper, without stating *when, where* or *amongst what papers* the search was made, is insufficient to prove the loss, so as to let in the secondary evidence objected to by the appellants. 11 *G. & J.*, 247, *Boothe vs. Dorsey.* 1 *Greenlf. on Ev.*, sec. 558.

3rd. Because the court below subsequently excluded that part of the testimony of Miss Mackall, which shows the *quo modo*, in which she had a knowledge of the existence and loss of the paper, and consequently, that the proof objected to by the appellants was permitted to go to the jury, when the witness is declared by the court to have no legal knowledge of the paper spoken of.

The *second* and *fourth* exceptions were taken to the refusal of the court to grant the prayers offered on the part of the appellants, and in regard to them it is insisted:

1st. That the first prayer should have been granted, because, assuming that the original gift of the girl Maria to Mrs. Beall, was for her separate use, her *husband being alive*, her right, if any, to the property, was *purely equitable*, and such as cannot be asserted in a court of *law.* 8 *Gill*, 139, *Smith vs. Morgan.* 6 *Md. Rep.*, 380, *Turton vs. Turton.*

2nd. That the fourth prayer should have been granted, because, as a *feme covert*, Mrs. Beall had no power *at law*, and without *her husband being joined*, to make the exchange through which she claims title, unless by the terms of the gift she was authorised to dispose of the subject of the gift, and then only in the manner prescribed by the terms of the gift creating the separate estate. 4 *Gill*, 493, *Burton vs. Marshall.* 4 *Md. Ch. Dec.*, 68, *Tarr, et al., vs. Williams & wife.* Ibid., 414, *Williams vs. Donaldson.* 5 *Md. Rep.*, 220, *Miller & Mayhew vs. Williamson.* The recent cases of *Cooke vs. Husbands*, 11 *Md. Rep.*, 492, and *Michael vs.*

*Baker*, 12 *Md. Rep.*, 158, only decide, that a *feme covert* may, *in equity*, dispose of her separate estate, where the instrument contains no limitation of the power of disposition, and do not profess to declare that she may do so *at law*. See on this point, also, 11 *Md. Rep.*, 465, *Johns vs. Reardon & wife.*

3rd. That the second and third prayers should have been granted, because, by the alleged *direct* gift and exchange of negroes to the wife, the title to them vested absolutely in Aquila Beall, the husband, and the plaintiff is consequently not entitled to recover in this suit. By vesting the legal estate in the wife, it necessarily follows, that the marital rights of the husband are thereby established, even in opposition to the contrary intention expressed by the donor. At common law, personal property accruing to the wife during coverture vests in the husband. The acts of 1842, ch. 293, and of 1853, ch. 245, have no bearing on the present case, because the gift and exchange relied on as conferring title upon the plaintiff occurred before the passage of these acts, and by the construction given to them in the case of *Schindel vs. Schindel*, 12 *Md. Rep.*, 294, their only effect is, to protect the property of the wife from the *debts* of the husband, but in no other way interfere with his marital rights and control over it.

The ruling of the court below, in the *third* exception, refusing to permit the appellants to prove by the assessors' books, that the negroes in controversy were, in 1852, assessed to their intestate, and that they had never been assessed to the plaintiff, is erroneous, because such proof was legitimate to go to the jury in conjunction with the appellants' possession, as tending to show their intestate claimed title to said negroes, and that such claim was known to the plaintiff. 2 *Md. Ch. Dec.*, 186, *Hughes vs. Jones.* 7 *G. & J.*, 20, *Cole vs. Hebb.* 12 *Md. Rep.*, 161, *Michael vs. Baker.*

The ruling of the court in the *fifth* exception, permitting the plaintiff herself to prove, not only the loss but also the *existence* and *contents* of the written paper, was erroneous.

1st. Because the plaintiff was not competent to prove the original *existence* of the paper nor its *contents*. 1 *Greenlf. on Ev.*, secs. 349, 558. 1 *Pet.*, 591, *Tayloe vs. Riggs.*

2nd. Because sufficient search was not made to let in secondary evidence of the contents of the paper. *Greenlf. on Ev.*, sec. 558. 4 *Md. Rep.*, 362, *Young vs. Mackall.* 3 *Md. Rep.*, 146, 159, *Gaither vs. Martin. Ibid.*, 312, 320, *Glenn vs. Rogers.* 9 *Gill*, 326, *Clement's Lessee vs. Ruckle.* 1 *Gill*, 60, *Mulliken vs. Boyce.*

*Edw. W. Belt* and *Thos. F. Bowie* for the appellee.

From the testimony in the case the court will see, that the appellee, from motives of humanity, parted with the possession of negro Maria, and received in exchange for her, negro Jane; that the daughter's husband having enjoyed the full benefit of this exchange, by obtaining possession of and selling Maria, his legal representatives now undertake to invalidate the whole contract, and to claim from the mother of his wife the very property which he persuaded her to accept as the consideration of her parting with that which, in conscience and equity, was her own. The defence, to say the least of it, is inequitable, and unless there be some stern and rigid rule of law, in the way of the plaintiff's recovery, clearly presented to this court, by the exceptions, the judgment must be affirmed. It is then insisted on behalf of the appellee—

That the rulings of the court below in the *first* and *fifth* exceptions, which have reference to the same matter, must be considered together, and were correct.

1st. Because in determining whether a proper foundation is laid for offering parol proof of the contents of a paper writing, the whole of the evidence is to be considered independently of the *order of time* in which it was produced at the trial. The answers of the witness, examined under the commission, to a *subsequent* interrogatory, are to be taken in connection with her answers to previous interrogatories, in order to support a reference to the lost document. The testimony of other witnesses *at the trial* must be considered to the same end. *All the proof* adduced at the trial, at whatever *stage* of the examination elicited, must, in point of law, be considered as having been *before the court* when it made the rulings objected to in

45       v. 13.

these two exceptions. 1 *Greenlf. on Ev., sec.* 558, *and note.* *Peake's Ev.,* 140, *et seq.* 8 *Gill,* 133, *Smith vs. Morgan.*

2nd. Because the evidence detailed in these exceptions shows there was sufficient proof of the *existence* and *loss* of the paper, to allow the admission of secondary evidence of its contents. 1 *Greenlf. on Ev., sec.* 558. 2 *H. & J.,* 402, *Dorsey vs. Gassaway.*

3rd. Because the right to the separate use of *Jane* was not made *by* the written paper, but only *attested* by it. The title did not pass by this paper, and it was not offered as a deed to pass the title.

4th. Because the *plaintiff* was properly produced as a witness to account for or prove the loss of the written paper, being the *last person* to whom its possession *was traced.* 1 *Greenlf, on Ev., secs.* 349, 558. 1 *Gill,* 60, *Mullikin vs. Boyce.*

5th. Because no objection was made in the court below, in either of these exceptions, to the *competency* of the plaintiff to testify as a witness in the case. The objection is confined to the *sufficiency* of the testimony to prove the *loss* and *contents* of the paper, that is, not that the testimony did not come from the lips of a *competent* witness, but that *what she said* was *insufficient* to prove the facts proposed to be established by her testimony.

But if there was error in the rulings of the court, in these exceptions, still the judgment will not be reversed on account of such error, because the appellants have suffered *no injury* thereby, for if this written paper be entirely excluded from the case, still there remains the unquestioned parol proof of the gift of the negroes to the *separate use* of the plaintiff, accompanied by *delivery,* and such a gift, accompanied by delivery, is just as effectual to pass the *title* and vest a *separate estate* in the wife, as a deed or written contract to the same purpose. *Macqueen on Husband & Wife,* in 66 *Law Lib.,* 86. 3 *G. & J.,* 508, *Carroll vs. Lee.* It was not necessary, therefore, that this gift or exchange should be reduced to writing; there is no law requiring such a *writing* to be recorded, and hence, it was not the *best* evidence of the gift, and, therefore, it was not necessary to prove the existence and loss of the paper, before introducing parol proof of the gift and exchange. 1 *Greenlf.*

on *Ev.*, secs. 82, 86, 275, 557, 558. The parol proof was as good evidence of the gift as the written paper, and the rulings of the court, in these exceptions, even if erroneous, have inflicted no injury upon the appellants, and the judgment cannot be reversed on account thereof.

The court properly rejected the testimony proposed to be offered in the *third* exception, that the negroes in controversy had been assessed to the appellant's testator, because they could only have been placed on the assessment books as his property, 1st, by himself or his own order, in which case the evidence would only amount to the declarations of the testator himself, and, therefore, inadmissible; or 2nd, by the direction of the appellee, of which *there is no proof;* or 3rd, by some other person, in which case the evidence would be mere hearsay and inadmissible.

The 3rd, 4th and 5th prayers in the *second* exception, and the three prayers in the *fourth* exception, were properly rejected. It is entirely immaterial whether or not Mrs. Beall was capable of exchanging or conveying away *Maria*, in the lifetime of her husband. Her power to do so has no connection with her capacity *to take* a separate estate in *Jane*. The evidence shows, that while Jane was given to her in a particular manner, by way of exchange, still, in relation to Mrs. Beall, the transaction was a gift, by Chew and wife, to her, of Jane, *as and for her separate property*. This is precisely *that* gift under which she claims the negroes in controversy. It is obviously unimportant what is the *consideration* of such a gift, for *that* does not affect the estate of the grantee. Besides, if it were at all *germane* to the present issue to show Mrs. Beall's right to dispose of *Maria*, who was, also, at that time, *her separate property;* the authorities fully sustain such a power in the wife. This point is fully decided by this court in the very recent cases of *Cooke vs. Husbands*, 11 *Md. Rep.*, 492, and *Michael vs. Baker*, 12 *Md. Rep.*. 158.

The 2nd, 6th and 7th prayers, in the *second* exception, were properly refused, because if *Jane* was given to Mrs. Beall, as and for her separate property, the *title* to Jane did *not* vest in Aquila Beall, the husband, but was protected as the separate

property of his wife. These prayers would seem to ignore an entire title of the law—that of the separate estate of the wife—yet no doctrine is clearer than her power to hold and take such an estate. The authorities establish, 1st, that the wife may hold a separate property which, *ex natura rei*, will be protected from the husband's control; 2nd, that she can take such an estate even during coverture; and 3rd, that a *feme covert* can act in reference to her separate property as though she were a *feme sole*. 3 *Atk.*, 393, *Graham vs. Londonderry.* 2 *Kent*, 162 to 167. *Macqueen on Husband & Wife* in 66 *Law Lib.*, 81 to 87. 1 *Gill*, 1, *Stevenson vs. Reigart.* *Lead. Cases in Eq.*, 324, *Hulme vs. Tenant.* 11 *Md. Rep.*, 492, *Cooke vs. Husbands.* 12 *Md. Rep.*, 185, *Michael vs. Baker.*

The first prayer, in the *second* exception, was also properly rejected, because, 1st, it does not state with precision, whether the *title* to *Maria* or *Jane* is such as could not be litigated at law, and was, therefore, calculated to mislead the jury; 2nd, but apart from this, the proposition of law intended to be presented by it is not sound. Assuming, as the prayer does and must, in order to be more than a mere abstraction, that when this exchange or gift of *Jane* for *Maria* was made, in 1836, it was for the *sole and separate use of the wife*, and that Jane was *delivered* to the wife under and by virtue of such a *gift*, and that the husband, Aquila Beall, though then alive, *died many years before this suit was instituted*, leaving his wife, the present plaintiff, surviving him, it asserts that she cannot *now* maintain an action, *in a court of law*, for Jane and her issue, against any one who may take them from her possession, *because* her title was, during the lifetime of her husband, an *equitable* title. The mere statement of this position, it is submitted, carries with it its own answer. She could, in equity, at least, even during the coverture, convey this property, and dispose of it, as she saw fit, without her husband's uniting with her. This position is clearly asserted by the recent decisions of this court already referred to. If her possession had been interfered with, *during the coverture*, her husband would, perhaps, have had to join in a suit at law for its recovery, but,

upon his death, her right to sue in her own name, in any court, either of law or equity, is as complete as in the case of a *chose in action* belonging to her, and not reduced into possession by the husband, during his life. The representatives of the husband had no right to these negroes—they became no part of *his* estate, and the wife surviving held them by virtue of no distribution, and of no title derived through administration upon his estate. It is therefore submitted, upon this point, in opposition to the views of the appellants—

1st. That equity protected the gift to the separate use of the wife, during the coverture, and the wife's title *ripened into a legal one* when the coverture ended. On the death of Aquila Beall, the title, both legal and equitable, survived to the wife. A separate use can exist only in the married state. If a gift is made to the separate use of a *feme sole*, she takes and enjoys it absolutely, but if she afterwards marries, without expressly renouncing the separate use, it will operate *throughout the coverture*, and when the husband dies, the wife being again single, the *separate* use *ceases*, liable to be *revived*, however, in the event of a second marriage, and so on, from time to time, *ceasing* and *reviving* alternately, upon each alteration of her personal condition. *Macqueen on Husband & Wife*, in 66 *Law Lib.*, 94, 95, 99.

2nd. That the husband, being presumed to be trustee for his wife, was a mere fiction to protect the property to the separate use of the wife. *Fletcher on Trustees*, 39. *Willis on Trustees*, 15, *note (o.)* 1 *Gill*, 1, *Stevenson vs. Reigart.* If the trust estate did not determine with the coverture, who became trustee, and where is the legal title now?

3rd. But even if there be an outstanding legal estate in a trustee, still the plaintiff, the *cestui que trust*, was entitled to the *possession* of the negroes, and this action of *replevin* being a mere *possessory* action, to sustain which the right of possession, at the time of suit brought, is alone necessary, the plaintiff can maintain it, and especially against any one who cannot show a better title or right to the possession. 13 *Md. Rep.*, 74, *Cumberland Coal & Iron Co. vs. Tilghman. Ibid.*, 64, *Wilson vs. Hinsley.*

ECCLESTON, J., delivered the opinion of this court.

This is an action of replevin, brought on the 24th of February 1857, by the appellee against the appellants, for two negro girls, Betty and Nelly. The defendants pleaded *non cepit,* property in themselves, property in a stranger, and limitations. The cause was tried upon issues joined on those pleas.

The facts, in regard to which there seems to be no controversy, are the following:

Aquila Beall, who died in the year 1840, was the husband of the plaintiff; and in his life time, made a gift of two negro slaves Eliza and Jenny, with their children and grand-children, to his daughter Amelia H. Beall, when she was quite young. Those negroes are now dead, but each of them had, at least, six children. Amelia intermarried with Leonard H. Chew, the defendants' testator, in the year 1835. But, some four or five years before this marriage, she gave and delivered negro Maria, one of the children of the above named Jenny, to her mother, the present plaintiff.

What follows is to be considered as a statement, taken from the evidence offered on the part of the plaintiff, but not conceded to be true, in all respects, by the defendants.

Negro Maria, it is said, was given to the plaintiff for her sole and separate use; that in 1836, about a year after his marriage, L. H. Chew was about to sell the children of Maria, with other negroes, descendants of those originally given by Aquila Beall to his daughter Amelia, and Maria wishing to go with her children, the plaintiff was persuaded by Chew and wife, to take Jane and her child John in exchange for her sister Maria, in order that the latter might not be separated from her children. The plaintiff consented to the exchange, and Jane was delivered to her by Chew and wife, for the plaintiff's sole and separate use, in lieu of and in exchange for Maria, who was delivered up to Chew and wife, and sold by them, with other negroes, to a Mr. Chew of Mississippi.

The negroes now in dispute are the children of Jane, born after the exchange, and have been brought up and claimed by the plaintiff as her property. After L. H. Chew made sale of the negroes, as above stated, his wife was permitted by her

mother to have the service of some of Jane's children, but the latter always claimed them as her property.

The grounds on which the plaintiff bases her right to recover the negroes in contest, are, that negro Maria was given and delivered to her for her sole and separate use, by her daughter Amelia, who subsequently became the wife of L. H. Chew. That after the marriage, the plaintiff, at the instance and persuasion of Chew and wife, consented to exchange Maria for her sister Jane, who was thereupon delivered to the plaintiff for her sole and separate use, in lieu of Maria. That the negroes in dispute are the children of the said Jane, and were born after the exchange.

The defendants urge sundry objections to the plaintiff's right to maintain the suit. They say, that Maria was not given to her for her sole and separate use, but absolutely, and she being then a *feme covert*, the title vested in her husband. That conceding the gift to have been for her separate use, she took only an equitable estate, the legal estate vesting in her husband as trustee, for her. And as her husband was living at the time of the alleged exchange, the plaintiff, without his concurrence, had no power or authority to sell, exchange or dispose of Maria, no proof having been produced, showing that, by the terms of the gift of Maria to the plaintiff, she was authorized to dispose of her. This being so, the alleged exchange could pass no title, in Maria, to Chew and wife, and consequently Mrs. Beall acquired no title to Jane. It is said, moreover, that admitting she did become entitled to Jane by the exchange, it was merely an equitable title, the legal estate vesting in Mr Beall as trustee. And although he died in 1840, yet the plaintiff has not such an estate in the negroes in dispute, as will enable her to maintain this action at law.

Having presented some of the grounds taken by the respective parties, we will now state our views in relation to the same.

There can be no doubt that, prior to our act of 1842, if a negro slave was given, absolutely, to a married woman, the title would vest in the husband.

If, as contended by the plaintiff, she received a gift of Maria,

for her sole and separate use, and the gift contained no restriction, upon the right of alienation or disposition, and no particular mode of alienation or disposition was prescribed, and the alleged exchange of Maria for Jane, was made between the plaintiff and Chew and wife, in virtue of which, Maria *was received by Chew and wife, and sold by him for the purpose of being taken to Mississippi,* the title of the plaintiff to Jane or her children, born after the exchange, cannot be successfully resisted, upon the ground of a supposed want of authority in the plaintiff, to make the exchange.

In reference to the authority of a *feme covert,* to dispose of personal property, given simply to her separate use, without restricting her power of disposing of it, or prescribing the mode in which that power is to be exercised: See *Hill on Trustees,* 421, 425, (*Ed.* of 1854;) 1 *Sanders on Uses and Trusts,* 380, (*Ed.* of 1855;) *Macqueen on Husband & Wife,* in 66 *Law Lib.,* top paging, 87, 94, 95.

*Cooke vs. Husbands, et al.,* 11 *Md. Rep.,* 506, is a case in equity, in which it was made a question, as to what was the effect of a deed executed by two married women, professing to dispose of property devised by their father, in trust, for their separate use. The trustee united in the deed but their husbands did not. It was there said: "Following the decisions, which, under our institutions, it is the duty of this court to respect as authority, we are of opinion, that a *feme covert* may act in reference to her separate estate as a *feme sole,* where the settlement contains no limitation on the subject, on the principle that the *jus disponendi* accompanies the property, unless restrained in terms, or by the manifest intention of the instrument."

A parol gift of a negro slave if accompanied with delivery, is valid; and we are not aware of any principle, which, prior to our act of 1842, would prohibit a separate use, in such property, for a married woman, from being given by parol, by her daughter, the negro being delivered at the time of the gift. *Macqueen on Husband & Wife,* 292, 293, in 66 *Law Lib.,* 86. 3 *G. & J.,* 508, *Carroll vs. Lee, Adm'r of Lee.* Nor do we think it was necessary to the validity of the alleged exchange,

Chew's Adm'rs *vs.* Beall.

that it should have been reduced to writing. Whether the proof, properly in the cause, shows there was an instrument of writing on that subject, and if it does, whether its loss and contents have been established, are questions which may be more appropriately considered in the subsequent part of the case.

The defendants, as we have seen, contend, that conceding the plaintiff acquired a separate use in Jane, and her after born children, it was merely an equitable estate, the legal estate being in her husband, as her trustee, and, therefore, although he died long before this suit was instituted, she is not entitled to recover in this action at law.

Admitting that, with a view of protecting the separate estate of the wife against the husband's marital rights, and against his creditors, where the estate has been created, simply for the separate use of the wife, and no trustee is named, the husband is to be considered as trustee for the wife, there can be no good reason, why, after the termination of the coverture, by the death of the husband, and the wife surviving, she should not be regarded as having the right of possession.

In this instance, the husband died in 1840. The suit was brought in 1857. From the time of the exchange, in 1836, until the death of Jane, she was held by Mrs. Beall as her property, without objection, says one of the witnesses. And there is no proof whatever, that the plaintiff's right of possession of Jane, or of her children, was ever resisted, or in any manner denied or interfered with by Mr. Beall, in his life time, or by his personal representatives, or by any person claiming through him, since his decease. Under such circumstances, and inasmuch as a right of possession is sufficient to support an action of replevin, we do not think the position assumed by the defendants is correct.

The testimony of Caroline Mackall, a witness for the plaintiff, was taken under a commission. In her answer to the third interrogatory, she states, the gift of negroes Eliza and Jenny, by A. Beall to his daughter, and the sale of negroes to a Mr. Chew, of Mississippi, by Leonard Chew the husband of Amelia. The witness then says, "Before the marriage of

46      v. 13.

Amelia H. Beall to Mr. Leonard Chew, she gave negro Maria one of the children of Jenny, to her mother the plaintiff, Mrs. Grace Beall, absolutely and for her own use. Among the negroes sold by Mr. Chew were some of Maria's children. Maria wished to go with them, and Mrs. Beall was persuaded by Mr. Chew and his wife, to take Jane in exchange for Maria her sister, in order that Maria might not be separated from her children. Mrs. Beall consented to the exchange, and Jane was delivered to her by Mr. Chew and his wife, to be held as her property in the stead of said negro Maria. (The exchange and the absolute right of Mrs. Beall to negro Jane as her separate property, was attested by a written paper signed by both Leonard Chew and his wife Amelia, and by them delivered to Mrs. Beall.) I never saw the said paper, and have no further knowledge of it than this, that I have often heard Mrs. Beall state, in the presence of Mrs. Chew her daughter, that she and her husband had signed and given to her such a paper, and regret the loss of it, and at no time did Mrs. Chew deny, that she had given Jane to her in exchange for Maria, and that she had given such a written paper to her in attestation of it."

In response to the 4th interrogatory, this witness, says, "My answer to this has been somewhat anticipated, in my reply to the preceding or third interrogatory. Amelia H. Beall made no sale, but before her marriage to Leonard Chew, did make a gift of negro Maria, to her mother, Mrs. Grace C. Beall, and delivered said negro to her. She retained the possession of Maria, claiming her as her own, up to the time of the sale made by Mr. Chew, subsequent to his marriage with Amelia, of the children of Maria, and then surrendered her in exchange for negro Jane, at the instance of Mr. and Mrs. Chew. Jane from that time until her death was held by Mrs. Beall as her property, without objection, so far as I ever knew. There was no paper writing within my knowledge, accompanying the original gift or the exchange, further than I have before mentioned. The children in controversy in this cause are, to my knowledge, the children of the said negro Jane. I never had any such paper in my possession. I have known Mrs. Beall to search diligently for the paper spoken of in my answer

to the 3rd interrogatory, without being able to find the same. The negroes in controversy, being the children of Jane, were born after the exchange for Maria, and have been brought up and claimed by Mrs. Beall as her property. After Mrs. Chew lost her negroes, that is, after they were sold, Mrs. Beall permitted her to have the service of some of Jane's children, but always claimed them as her own."

Aquila Beall was the uncle of this witness, her mother being his sister.

The first bill of exceptions shows, that at the trial, the plaintiff offered to read in evidence to the jury the deposition of Caroline Mackall, taken under the commission. But the defendants' counsel prayed the court to exclude from the jury, so much of said deposition contained in the answer to the third interrogatory, as is included in brackets, the same being as follows: "[The exchange and absolute right of Mrs. Beall to negro Jane, as her separate property, was attested by a written paper, signed by both Leonard H. Chew and his wife Amelia, and by them delivered to Mrs. Beall.]"

The ground stated why this evidence should be excluded, is, "Because it is not competent or admissible for the witness to speak of the contents, operation or effect of said paper, as the information she had, in relation to said paper, was derived from conversations had with the plaintiff and Mrs. Chew, after her marriage with the testator of the defendants, and because the same is merely hearsay testimony." But the court overruled the prayer and allowed the testimony objected to, to be read to the jury as part of said deposition; to which overruling and allowance the defendants excepted.

By referring to the commission and return, as contained upon certain pages of the record, this exception includes the whole testimony of Caroline Mackall.

The second exception:

After the evidence detailed in the preceding bill of exceptions, which is made part of this exception, had been read to the jury, saving and reserving the last sentence, in the answer of Caroline Mackall to the third interrogatory, commencing with the words: "I never saw," and ending with the words,

"in attestation of it," which were excluded by the court, and not excepted to by either side, the plaintiff proved by Mrs. F. Bowie, that Aquila Beall, the husband of the plaintiff, made a gift of two negroes, Jenny and Eliza, to their daughter Amelia H. Beall, when she was a small girl. That Aquila died in April 1840; that Amelia H., about four or five years before her marriage to the testator of the defendants, which took place in October 1835, gave to her mother, the plaintiff, for her sole and separate use, negro Maria, then about sixteen years of age; that in 1836, L. H. Chew, being about to sell the children of Maria to one Frisby Chew, of Mississippi, he and his wife made an exchange with the plaintiff for negro Maria, and gave and delivered to the plaintiff, for her sole and separate use, in lieu of and in exchange for said woman Maria, a woman named Jane and her child John, then the property of Leonard H. Chew; and further proved by the said witness, that the negroes in controversy in this case, were the children of said negro woman Jane. Whereupon, the defendants prayed the court to grant the seven following instructions:

1st. "If the jury find from the evidence in this case, that negro Maria was given by Amelia H. Beall to her mother, the plaintiff, her husband A. Beall being then alive, although they may infer the gift for her sole and separate use, and that the plaintiff exchanged said negro Maria with Amelia H. Beall, and her then husband, L. H. Chew, in 1836, while the husband of the plaintiff was alive, for negro woman Jane, that then the title of the plaintiff is not such a one as could be litigated in a court of law, and that the plaintiff is not entitled to recover in this action.

2nd. "If they further find from the evidence in this cause, that the negro woman Jane, who is the mother of the two negroes in controversy in this case, was given and delivered by Leonard H. Chew and Amelia H. his wife, to the plaintiff, during her coverture with the said Aquila Beall, that then the title to the negro woman Jane and her increase, vested in the said Aquila Beall, and the plaintiff is not entitled to recover in this action.

3rd. "That if the jury believe from the evidence in this

cause, that at the date of the alleged exchange of negroes Maria and Jane, the husband of the plaintiff was alive, then the plaintiff had no legal power to exchange Maria, or confer any title to her, and consequently the alleged exchange for Jane, in 1836, was invalid, and gave no title to the plaintiff in negro Jane, and that the wife had no power.

4th. "That if the jury find from the evidence in this cause, that at the date of the alleged gift and exchange of negroes Maria and Jane, the plaintiff was a *feme covert*, then she had no legal power to transfer the trust estate vested in her by the said alleged gift, and, consequently, the plaintiff is not entitled to recover.

5th. "That if the jury find from the evidence in this case, that at the date of the alleged gift and exchange of negroes Maria and Jane, to the sole and separate use of the plaintiff, she, the plaintiff, was a *feme covert*, that then she is not entitled to recover in this action, unless they further find, that at the time of the alleged gift or exchange, the power of disposing of the said property by the said plaintiff, was conferred by the terms of the original gift of Maria, or by the terms of the exchange of negroes Jane and Maria.

6th. "That if the jury find from the evidence, that at the date of the alleged gift of Maria, to the plaintiff, her (the plaintiff's) husband was living, then the title to the said Maria, vested in the plaintiff's husband, and she is not entitled to recover in this action.

7th. "That if the jury believe from the evidence, that at the time of the alleged exchange of Maria for Jane, the husband of the plaintiff was alive, then the plaintiff is not entitled, under the pleadings and evidence in this cause, to recover.

All these instructions were refused by the court, and the defendants excepted.

Third exception:

After making the evidence contained in the two preceding bills of exceptions part of this, it then states, that "the defendants offered to prove, by an examined copy of the assessors' books of said county, of the assessment and valuation of property, made in compliance with the act of January session

1852, that the negroes in controversy in this suit were not upon the list of negroes assessed to the plaintiff, and further offered to prove, by an examined copy of the assessors' books of said county, of the assessment and valuation of property, made in compliance with the act of January session 1852, that the negroes in controversy in this cause, were assessed to the said Leonard H. Chew, as his property."

To this evidence the plaintiff objected. The court sustained the objection, and the defendants excepted.

Fourth exception:

It is stated in this exception that, "the plaintiff offered the evidence taken under a commission heretofore issued," (which is the evidence of Caroline Mackall, as appears from the reference made in the exception to the commission and return.) And the exception then says: "And also proved by Mrs. F. Bowie, that the said gift and exchange spoken of in the testimony taken under the commission, was for the separate use of Mrs. Beall, the plaintiff. The defendants then proved, that at the date of the alleged gift of Maria, and exchange of Maria for Jane, Aquila Beall, the husband of the plaintiff, was living."

The exception then contains three prayers, presented by the defendants:

1st. "That if the jury believe from the evidence, that at the date of the alleged exchange of Maria and Jane, the husband of the plaintiff was alive, then the plaintiff had no legal power to exchange Maria for Jane, or confer any title to her, and consequently the alleged exchange for Jane, in 1836, was invalid, and gave no title to the plaintiff in negro Jane; and that consequently the plaintiff could derive no title by said exchange to Jane, and that the wife had no proper—

2nd. "That if the jury believed, that at the date of the alleged gift and exchange of Jane and Maria, the plaintiff was a *feme covert*, then she had no legal power to transfer the trust estate, vested in her by the alleged gift, and consequently she is not entitled to recover.

3rd. "That if the jury find, that at the date of the alleged gift and exchange of Maria and Jane, to the sole and separate

use of the plaintiff, she was a *feme covert*, then she is not entitled to recover in this action, unless they further find, that at the time of the alleged gift or exchange, the power of disposing of the said property by the plaintiff, was conferred upon her by the terms of the original gift of Maria, or by the terms of the exchange of Jane and Maria.

The court refused to grant either of these three prayers; to which refusal the defendant excepted.

Fifth exception.

This exception is in the following words.

"At the trial of this cause, the plaintiff, to maintain the issue on her part joined, and for the purpose of proving the loss and contents of the instrument of writing, executed by Leonard H. Chew and Amelia H., his wife, attesting the exchange with her, by them, of negroes Maria and Jane, produced and swore the plaintiff, who stated, that an instrument, attesting the exchange of said negroes, between her and the said Leonard H. Chew and wife, was executed by them and by them delivered to her; that the exchange was to her separate use, and that she took possession of said paper, but that the same has been lost or mislaid, and that after diligent search by her among her papers, she has been unable to find the same.— The defendants objected, that there was no sufficient evidence in this cause to establish the loss or contents of the said paper, and prayed the court to instruct the jury, that if the jury believed from the evidence, that the exchange of Maria by Chew and wife, or with the plaintiff for Jane, was evidenced by writing, then, that no parol testimony is admissible to establish said exchange, there being no sufficient proof, that a sufficient search has been made for said paper to admit secondary evidence of its contents. But the court overruled said objection and refused said prayer. To which overruling and refusal of the court, the defendants by their counsel except."

There are seven prayers in the second bill of exceptions and three in the fourth. Some of these prayers omit any allusion whatever to any evidence, tending to show, that the original gift of Maria was for the sole and separate use of the plaintiff, or that she acquired the sole and separate use of Jane by vir-

tue of the alleged exchange. ' Such prayers, in our opinion, were properly refused, where they asked the court to instruct the jury, that if they believed certain facts to exist the plaintiff was not entitled to recover, when, among the facts mentioned, the separate use of the plaintiff was entirely omitted, and no question submitted in reference to any evidence on the subject. The jury might have believed the enumerated facts to exist, and still it would not have been proper to instruct them to find a verdict against the plaintiff, on such belief, in the face of evidence tending to show the existence of a sole and separate use in her, in regard to the negroes.

The third prayer in the second exception, and the first prayer in the fourth, do not seem fully to express what we suppose was designed, but taking them as explained by the defendants' counsel they ought not to have been granted.

In view of the evidence tending to prove the sole and separate use of the plaintiff, in reference to the original gift and the subsequent exchange, notwithstanding both transactions occurred in the lifetime of the plaintiff's husband, still, we think, all the prayers in the second and fourth exceptions were properly refused. They are inconsistent with the principles which we have announced in the previous part of this opinion, when giving our views in relation to the grounds taken by the parties: which will be found preceding our statement of the testimony of Caroline Mackall, as taken under the commission.

There was no error in rejecting the evidence offered by the defendants in the third exception. It does not appear from the examined copy of the assessors' books, or from any other proof offered, or proposed to be offered, either that the list of negroes assessed to the plaintiff was signed or sworn to by her, or that the list of those assessed to Leonard H. Chew was signed or sworn to by him. Nor does it appear the plaintiff had any knowledge, that the negroes in contest were assessed to L. H. Chew. We are aware, that the Act of 1852 authorises the assessor to require such lists to be signed and sworn to by the party to be assessed, but the law does not make it obligatory upon the assessor to require this to be done. And according to our experience, it is very frequently the case, in the

country, at least, that the lists are taken by the assessors without the signature or oath of the party.

*In Cole vs. Hebb,* 7 *G. & J.,* 23, 24 and 43, certain negroes were in controversy, in an action of replevin, which negroes were, a woman, named Maria, and her issue.

Among other proof produced, in defence, was the inventory of John Cole, returned by the defendant, as his administrator, in which Maria was returned and appraised as a part of the property of said John Cole. The defendant read to the jury the assessment lists of the property of said John Cole, and also of the property of William Guyther, returned to the clerk of the levy court of the county, by the assessor, and *signed*, one list by *said John Cole,* and one by *Ann Guyther, the widow of William Guyther*.

In the list of Cole's property, Maria, the woman in question, was mentioned, but she was not included in the list of Guyther's.

Hebb, the appellee, was the administrator *d. b. n.* of Wm. Guyther.

The inventory and assessment lists, it appears, were read without objection, and consequently no question was raised or decided, as to the admissibility of either.

The defendant, Cole, prayed the court to instruct the jury, that if they believed negro Maria was given in by the defendant's intestate, to the assessor of the county, as his property, and was returned to the records as such, and also, that the said negro was not assessed in the assessment list, returned by said assessor at the same time, as the property of the plaintiff, or his testator, and also, that the defendant returned the said negroes as the property of his intestate, in his appraisement of said estate, to the orphans court, such facts were *prima facie* proof, from which the jury might infer the adverse claim of the defendant and of his intestate, and the knowledge of such claim by plaintiff, or his administrator. But the court refused to give this instruction, and the refusal was held to be correct, in the Court of Appeals. There it is said, "We concur with the court below, in their refusal of the appellant's second prayer in the second bill of exceptions; the facts upon

47      v. 13.

which it is predicated, not being sufficient in law to authorise the jury to impute to George Guyther, the executor, a knowledge of the existence of any of the facts, from which it was attempted to deduce his knowledge of the adverse claim of the appellant, or his intestate, to the negroes in question. He was in no wise either a party or privy to the inventory or assessment lists relied on.." We do not perceive that this case can be considered as an authority, in support of the admissibility of the evidence, offered in the third bill of exceptions, in the case before us..

In *Hughes vs. Jones*, 2 *Md. Chan. Decisions*, 186, there was a dispute, whether, about the year 1817, a negro, named Isaac, was the property of Josiah Hughes, or of Jesse Hughes.

In addition to other evidence an examined copy from the assessors' books, for the year 1817, was offered. The copy purported to be a list of the property of said Josiah, made for the purpose of taxation, and was *proved to have been signed by him*. Negro Isaac was not upon it. Objection to the admissibility of this paper, as evidence, was made, upon the ground, simply, that it was only a copy. The chancellor overruled the objection, and whilst arguing the propriety of doing so, he says: "Besides this list, signed by Josiah Hughes, it appears, by a list marked 2, and proved to be signed by Jesse Hughes, that in the same year, 1817, a negro boy, called Isaac, was assessed as his property.."

It appears, that each list in that case had been signed by the party, whose property it professed to contain. In the present case there is no evidence, that either list was signed by either party. Moreover it has been said, by Miss Caroline Mackall, in her deposition, "that after Mrs. Chew lost her negroes, that is, after they were sold, Mrs. Beall permitted her to have the service of some of Jane's children, but always claimed them as her own." Now, whilst the negroes were in the service of Mrs. Chew and her husband, by the permission of Mrs. Beall, Mr. Chew might have thought proper to have himself charged with the taxes upon them, without the least intention of claiming the negroes as his property. He might very well afford to pay the taxes upon them, whilst he enjoyed their services without being required to pay wages for them..

If the questions, presented by the first and fifth bills of exceptions, had been decided by the court in favor of the defendants, the effect would have been to exclude all proof of the existence, loss and contents, of any instrument of writing, in relation to the alleged exchange of Maria for Jane. The consequence of which would have been, to leave the gift and delivery of Maria, and the exchange of her for Jane, with the delivery of each, supported and sustained by the unimpeached and uncontradicted parol proof of Caroline Mackall and Mrs. Bowie. The rulings, therefore, against the defendants, in those two exceptions, did no injury to them; inasmuch as it must be supposed the parol proof of these two witnesses would be sufficient to convince the jury, that the exchange had been made. If, therefore, these two exceptions had been ruled in compliance with the wishes of the defendants, we cannot suppose the verdict would have been different from the one which was given.

Conceding then, (without deciding,) that the court erred in regard to the first and fifth bills of exceptions, we do not think the case should be reversed on account of those decisions.

*Judgment affirmed.*

(Decided May 11th, 1859.)