(Decided 20th June, 1871.)

HENRY K. HAYES *vs.* JOSEPH WELLS and CHAS. BABBITT, trading as WELLS & BABBITT.

*Agreement for the Extension of the time of Payment of a Bond—Effect to Discharge a Guarantor—Collateral Security—How effecting the right of a Creditor to enforce payment of the Original obligation — Evidence — Practice in the Court of Appeals.*

An extension of the time of payment of a bond, given by the holder thereof to the principal obligor, does not operate to discharge a guarantor of such bond, if the agreement for the extension were entered into after the maturity of the bond.

An agreement, which will operate to discharge a surety in a bond, or a guarantor of its payment, must be an actual agreement between the creditor and the principal to extend the time of payment, and it must be upon sufficient consideration, and must amount in law to an estoppel

Hayes *vs.* Wells and Babbitt.

upon the creditor sufficient to prevent him from bringing a suit before the expiration of the extended time; when such an agreement is made, the surety is discharged.

The agreement for extension must not only be valid and binding in law, but the time of the extension must be definitely and precisely fixed.

The possession of an additional or collateral security, does not impair the right of a creditor to enforce payment of the obligation, to secure which the collateral was given and accepted, so long as it does not appear that the debt has been paid.

An agreement to extend the time of payment of a bond will not be inferred from the acceptance by the holder, of a collateral security which did not mature until after the maturity of the bond.

A witness having testified touching the insolvency of certain parties, that by general reputation, they were insolvent; that he never knew them to possess any property other than a little household furniture; that he knew of the failure to make debts out of them; was asked "whether or not, from the circumstances of the parties, and his knowledge, they were not in his *judgment* insolvent?" and he replied they were. HELD:

That this was an improper question—the *opinion* of the witness, based upon the circumstances of the parties, and his knowledge of facts, was not legal evidence.

Where an illegal question is asked a witness, and his answer allowed to go to the jury as evidence, and exception is taken thereto, the judgment against the exceptant will not be reversed on appeal, if it appear to the Court that he was not injured by the admission of the evidence.

APPEAL from the Circuit Court for Caroline County.

The facts of the case, together with the exceptions which were taken in the Court below by the defendant, are sufficiently stated in the opinion of this Court. The verdict and judgment being for the plaintiffs, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, MAULSBY, GRASON and MILLER, J.

*George M. Russum, A. B. Hagner* and *A. Randall,* for the appellant.

*John B. Brown,* for the appellees.

MAULSBY, J., delivered the opinion of the Court.

Two questions are presented in this case, one on the admissibility of evidence, and the other on the prayer of the appellant refused by the Circuit Court. We will consider the prayer first.

The appellant assigned to the appellees the bond of Alexander A. Laws and Daker G. Jester, due February 7th, 1857, by an assignment in writing under seal, containing a guaranty for the payment thereof, and on this guaranty the suit was brought.

Laws, one of the obligors in the assigned bond, had two bonds of Theodore L. Davis, one of which was due in December, 1857, and the other in September, 1858, on both of which, judgments had been rendered, under the laws of Delaware, it is presumed, by a Delaware Court at May Term, 1856, and in November, 1856, both of said judgments were entered "transferred to Wells & Babbitt" on the docket of that Court.

Evidence was offered by the appellant, tending to prove that the appellees had received the bonds of Davis in payment of the bond of Laws & Jester; and by the appellees, that the appellant had waived any right arising from neglect on their part to institute suit on the bond of Laws & Jester, or on those of Davis, and that the bonds of Davis were assigned to them as collateral security for the payment of the bond of Laws & Jester. On these points there was conflicting proof.

The appellees also offered evidence to prove that Laws & Jester were insolvent at the time of the maturity of their bond in February, 1857, and that Davis was insolvent at the maturity of each of his bonds. The appellant offered no evi-

dence contradicting this proof, and none tending to prove that any of the parties, Laws, Jester or Davis, were solvent.

The first prayer of the appellant was, that if the jury believed from the evidence that the appellant assigned to the appellees the bond of Laws & Jester, and that subsequent to the assignment, and before the maturity of the bond, the appellees received from Laws the bonds of Davis in payment and discharge of the debt due on the assigned bond, their verdict must be for the appellant, which was assented to by the appellees. Thereupon the appellant offered the prayer now under consideration : That if the jury believe from the evidence that the appellant assigned to the appellees the bond of Laws & Jester, and guaranteed the payment thereof, and that subsequent to said assignment the appellees received from Laws the bonds of Davis as collateral security, and extended the time of payment of the assigned bond by Laws & Jester, without the knowledge and consent of the appellant, their verdict must be for the appellant. This prayer was defective on several grounds. Even if there had been proof of a valid contract for extension of the time of payment of the bond of Laws & Jester, on which the appellant was guarantor, yet if that agreement had been entered into after the day of the maturity of the bond, it would be inoperative to discharge the guarantor or security. To give to such an agreement that effect, it must be made before the maturity of the bond. *Rees vs. Berrington*, 2 *Vesey, Jr.*, 540 ; *United States vs. Howell*, 4 *Wash. C. C. Rep.*, 620.

The proposition contained in the prayer being that an extension of time of payment given by the holder to the principal obligor at any time after the assignment to the holder, operates to discharge the surety, or guarantor, without regard to whether the extension were given prior or subsequent to the maturity of the bond, it is, in this respect, defective.

An agreement, which will operate to discharge a surety in a bond, or a guarantor of payment of a bond, must be an

actual agreement between the creditor and the principal to extend the time of payment, and it must be upon sufficient consideration, and must amount in law to an estoppel upon the creditor, sufficient to prevent him from beginning a suit before the expiration of the extended time; when such an agreement is made the surety is discharged. See the numerous authorities collected in note f, 2 *Parsons' Cont.*, 26; *Oberndorff, Trustee, vs. Union Bank of Baltimore*, 31 *Md.*, 126.

The agreement for extension must not only be valid and binding in law, but the time of the extension must be definitely and precisely fixed. *Miller vs. Stem*, 2 *Penn. St. Rep.*, 286, and cases collected in note f, above referred to.

Whether, to have the effect of discharging the surety in a bond, or a guarantor under seal, an agreement for extension of time of payment, in all other respects valid, may be by parol, or whether it must be under seal, we are not to be understood to decide. There are conflicting authorities on the point, and we are not called on to decide it in this case. That a parol contract is not sufficient is held in *Tate vs. Wymond*, 7 *Blackf.*, 240, where the case of *Davey vs. Prendergrass*, 5 *Barn. & Ald.*, 187, is relied on, whilst the contrary is held in *United States vs. Howell*, 4 *Wash. C. C. R.*, where Mr. Justice WASHINGTON reviews the case in 5 *Barn. & Ald.*, and supposes that it was not meant to hold that position, but concludes that if it does, he dissents from it, for the reasons which he assigns.

There is, in this case, no evidence from which the jury could be at liberty to find such an actual agreement between the creditor and one of the principals, Laws, to extend the time of payment, upon sufficient consideration, and sufficient to prevent the creditor from bringing suit before the expiration of the extended time, even if a parol agreement were conceded to be sufficient, as the law requires, and on that ground alone, it would have been error in the Court below to have granted the prayer. It would have misled the jury.

But the prayer assumes that the bond of Davis was accepted, by the appellees as collateral security for the payment of the bond of Laws & Jester. The possession of an additional or collateral security cannot impair or affect the right of a creditor to pursue and enforce payment of the obligation, to secure which the collateral was given and accepted, so long as it did not appear that the debt had been paid. *Brewster & Spratt vs. Frazier,* 32 *Md.,* 302. The effect of the prayer would be to assert as a legal inference that an agreement to extend the time of payment of the assigned bond, must result from the acceptance by the holder of a collateral security which did not mature until after the assigned bond matured. In 2 *Parsons on Contracts,* 685, it is said that an agreement to suspend or delay will not be inferred from the mere giving of collateral security, with power to sell the same at a certain time, if the debt be not previously paid. And in *Emes, et al. vs. Widdowson,* 4 *Carrington & Payne,* 151, where the plaintiffs and defendant had come to an arrangement whereby the defendant assigned certain property as a security for certain sums then due, and also for all future demands, with a power of sale not to be executed until after six months notice, Chief Justice TINDAL said, "such an assignment can only be considered as collateral security, and the personal remedy is not suspended, as there is not any clause to that effect in the deed." So far, then, from the law making the inference asserted by the prayer, it will not permit it to be made, according to these authorities.

That the bonds of Davis were not received by the appellees in payment of the bond of Laws & Jester, appears from the finding by the jury on the first prayer, admitted by the appellees.

There was no error in the refusal of the Court to grant the appellant's second prayer.

The question which we will next consider is the exception to the evidence admitted by the Circuit Court.

The appellees proved by the witness, Nicholson, that by general reputation Laws & Jester were insolvent—that Jester left for California prior to February, 1857—that he knew both for several years prior to 1857, and that he never knew them to possess any property other than a little household furniture since February, 1857—that he knew of the failure to make debts out of them. This was legally sufficient proof of insolvency. The appellees, however, further asked the witness " whether or not from their circumstances and his knowledge, they were not in his judgment insolvent " and he said they were. This is the question excepted to. The witness had stated their circumstances and his knowledge,—that is, his knowledge of facts touching their insolvency; and his opinion, based on those circumstances and facts, was not, in our opinion, legal evidence, and was improperly allowed to go to the jury. This Court has said in the case of *Higgins, et al. vs. Carlton & Scaggs*, 28 *Md.*, 115, in discussing the cases in which opinion is admissible, that " the rule has been already sufficiently relaxed, and we think that the doctrine of admitting the opinions of witnesses has been carried quite as far as is consistent with a proper administration of the law." Opinions have been admitted only where, from the nature of the case, they are the best evidence attainable. But, as a rule, where an issue is capable of being proved by facts, evidence of a lesser degree, or of more uncertain character, ought not to be admitted. Liability of a witness to the penalties of perjury, if he corruptly misstate facts, is one of the securities for truth which ought not to be removed, unless on necessity. And in proportion as opinion is admitted, that liability is removed. The existence of general reputation of insolvency is a fact, like any other fact. If it be not true, the witness, who states it to be a fact, is responsible as fully as if he misstate any other fact, and this class of proof has been declared to be admissible to prove insolvency.

Whilst we are decidedly of opinion that the evidence of the witness' opinion was improperly admitted, it remains to in-

quire whether the appellant was injured by its admission. If it clearly appear to the Court that no injury was done, the judgment will not be reversed. In *Chew's Adm'r vs. Beall,* 13 *Md.,* 348, the question was the gift and delivery and subsequent exchange of a slave. The plaintiff offered proof of the contents of a written paper evidencing the exchange, which had been lost. The Court below admitted the proof, and an exception was taken. The plaintiff also offered the parol proof of two witnesses to the gift, delivery, and exchange. The Court of Appeals said "if the questions presented by the first and fifth bills of exception had been decided by the Court in favor of the defendants, the effect would have been to exclude all proof of the existence, loss, and contents, of any instrument of writing in relation to the alleged exchange of Maria for Jane. The consequence of which would have been to leave the gift and delivery of Maria, and the exchange of her for Jane, with the delivery of each, supported and sustained by the unimpeached and uncontradicted parol proof of Caroline Mackall and Mrs. Bowie. The rulings, therefore, against the defendants, in these two exceptions, did no injury to them, inasmuch as it must be supposed the parol proof of these two witnesses would be sufficient to convince the jury that the exchange had been made. If, therefore, these two exceptions had been ruled in compliance with the wishes of the defendants, we cannot suppose the verdict would have been different from the one which was given."

In *Comstock, et al. vs. Pendergast,* an unreported case, decided at April Term, 1869, the plaintiffs offered proof to sustain their claim, which was admitted, excepted to, and was error. They, however, proved by three witnesses the admissions by the defendant of the correctness of their claim. The proof of one of these witnesses was controverted by evidence offered by the defendant, but that of the other two was not contradicted. The defendant asked one of the plaintiffs' witnesses, after his examination, to compare the vouchers with the claim of the plaintiffs, and re-called the witness to state

the result, when he said that the claim was correct. This Court refused to reverse, because, under all the circumstances, the erroneous admission of that part of the proof which was inadmissible did not injure the defendant.

In this case, the witness, Nicholson, had proved the insolvency by competent evidence, before the illegal question was propounded to him. After his examination, the appellees further proved the same fact of insolvency by the competent evidence of Thomas McCrackin and of Laws, one of the insolvent parties, and the appellant offered no conflicting evidence. He offered no evidence tending to prove solvency, or to contradict or impeach either of the appellant's witnesses. The fact having been proved by three competent witnesses, and not contradicted, to use the language of the Court in the case in 13 *Md.*, "it must be supposed that the proof of these witnesses would be sufficient to convince the jury" of the fact of insolvency, and that the verdict would not have been different, notwithstanding the admission of one piece of illegal evidence which tended to the same conclusion.

Since the argument, a prayer, which had been granted below, and omitted in making up the record, has been sent up, with an agreement that it be considered as if contained in the record. That prayer contained the law applicable to the case, but does not aid in respect to the inadmissible evidence in question. We. think, however, that, under all the circumstances of the case, substantial justice would not be promoted by a reversal of the judgment because of the admission of the evidence excepted to, and that the judgment ought to be affirmed.

*Judgment affirmed.*

(Decided 20th June, 1871.)